**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RICARDO CARABALLO,**

        **Petitioner,**

**v.**                                                              **Case No. 8:14-cv-260-T-36TBM**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

        **Respondent.**

_____/

## ORDER

Ricardo Caraballo ("Caraballo"), a Florida prisoner proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. Section 2254. (Doc. 1)  He challenges his convictions for sexual battery and lewd battery entered by the Circuit Court for the Tenth Judicial Circuit for Polk County, Florida.  The Respondent filed a response and supporting exhibits. (Docs. 11, 14)  Caraballo has not filed a reply.  The Respondent concedes the petition is timely. (Doc. 11 at 4)  Upon review, the petition must be denied.

### I. PROCEDURAL HISTORY

Caraballo was charged with sexual battery on a child less than 12 years of age (count one), lewd molestation of a child 12 years of age or older but under 16 years of age (count two), and lewd battery on a child 12 years of age or older but under 16 years of age (count three).  The charges stem from alleged incidents of Caraballo's sexual abuse of A.O. at Caraballo's house and apartment.

Caraballo was tried by jury and found guilty of counts one and three as charged. He was found not guilty on count two.  Caraballo was sentenced to life in prison on his sexual battery conviction and to a concurrent 15-year prison term on his lewd battery conviction.  The Florida appellate court *per curiam* affirmed the judgment without written opinion.  *Caraballo v. State*, 965 So. 2d 1148 (Fla. 2d DCA 2007) [table].

Caraballo filed a *pro se* petition for writ of habeas corpus in which he alleged his appellate counsel rendered ineffective assistance on direct appeal. (Ex. 7)  The State responded (Ex. 8), and the Florida appellate court denied the petition without elaboration. *Caraballo v. State*, 988 So. 2d 1097 (Fla. 2d DCA 2008) [table].

Caraballo raised five claims of ineffective assistance of counsel in a *pro se* motion for postconviction relief filed under Rule 3.850 of the Florida Rules of Criminal Procedure. (Ex. 11)  The state trial court summarily denied two of Caraballo's claims; the remaining claims were denied after an evidentiary hearing. (Exs. 12, 15, 16)  The Florida appellate court *per curiam* affirmed without written opinion.  *Caraballo v. State*, 121 So. 3d 46 (Fla. 2d DCA 2013) [table].

## II.  GOVERNING LEGAL PRINCIPLES

### A.  EXHAUSTION AND PROCEDURAL DEFAULT

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  Exhaustion of state remedies requires that the state prisoner "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights[.]"  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  To provide the State with the necessary

"opportunity," a state prisoner must fairly present his claim in each appropriate state court. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004).  Se*e also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that state prisoners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").  A petitioner must present his claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (citing *Picard*, 404 U.S. at 277).

A petitioner who fails to raise a federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061 (1994).  Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice.  This only occurs in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is "actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  To meet the "fundamental miscarriage of justice" exception, a petitioner must show constitutional error coupled with "new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### B.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus.  *See* 28 U.S.C. § 2254; *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.  "The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an

unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 786–87 (2011).

Before applying AEDPA deference, the federal habeas court must first identify the last state court decision that evaluated the claim on the merits. *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (*en banc*), *cert. granted, Wilson v. Sellers*, --- S. Ct. ----, 2017 WL 737820 (No. 16-6855) (Feb. 27, 2017). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. Where a state court's decision is unaccompanied by an explanation, a petitioner's burden under Section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. A habeas court must determine what arguments or

theories supported or could have supported, the state court's decision, and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Court. *Richter*, 562 U.S. at 102.

Review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. The Court must presume the state court's factual determinations are correct, unless the petitioner rebuts that presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1311 (11th Cir. 2016). "When considering a determination of a mixed question of law and fact, such as a claim of ineffective assistance of counsel, the statutory presumption of correctness applies to only the underlying factual determinations." *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1259 (11th Cir. 2016) (quoting *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 651 (11th Cir. 2014)).

Section 2254(d)(2), like Section 2254(d)(1), requires that a federal court afford substantial deference to a state court's factual determinations. If "[r]easonable minds reviewing the record might disagree about" the state court factfinding in question, "on habeas review that does not suffice to supersede" the state court's factual determination. *Daniel*, 822 F.3d at 1259 (11th Cir. 2016) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Caraballo contends that his trial and appellate counsel rendered ineffective assistance. *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim.  To establish ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) the petitioner suffered prejudice as a result of the deficient performance. 466 U.S. at 687–88.  A reviewing court's scrutiny of counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.  466 U.S. at 689. Should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other.  466 U.S. at 697.

The *Strickland* standard governs claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).  Appellate counsel does not have a duty to raise every non-frivolous issue.  *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).  "[A]n effective attorney will weed out weaker arguments, even though they may have merit." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009).  To establish prejudice, the petitioner must show that there is a reasonable probability that he would have prevailed on appeal but for counsel's deficient performance.  *Robbins*, 528 U.S. at 285-86.

When viewing a *Strickland* claim through the lens of Section 2254(d)'s unreasonableness standard, the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  *Richter*, 562 U.S. at 101.  Sustaining a claim of ineffective assistance of counsel is very difficult because the standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly so."  *Richter*, 562 U.S. at 105 (quotations omitted).  *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard

of *Strickland* and AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 562 U.S. at 105.

## III.  DISCUSSION

### Ground One

Caraballo alleges that the trial court erred in denying his motion to suppress his statements to law enforcement.  Caraballo contends that his statements were made during a custodial interrogation without proper *Miranda*[1] warnings in violation of the Fifth Amendment.  He asserts that investigator Cone flashed her badge and implicated him "based on her statements from the outset that she did not believe certain things he was telling her and that she believed the child . . ." (Doc. 1 at 5)  According to Caraballo, the investigator did not advise him that he was free to leave until she completed her questioning.  Asserting that he was arrested a few hours later, Caraballo claims that he "did not feel he had any choice, based on Cone's authority, [sic] that he could refuse to talk to her." (Doc. 1 at 5)  Caraballo alleges that under the totality of the circumstances, the manner of the investigator's questioning amounted to a custodial interview with the purpose of garnering inculpatory information. (Doc. 1 at 5)

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Caraballo raised the denial of his motion to suppress his statements on direct appeal.   The state appellate court's unelaborated decision warrants deference under Section 2254(d)(1) as an adjudication of Caraballo's ground on the merits.

*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."  *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (*per curiam*).   To determine whether a person is in custody, a court examines all of the circumstances surrounding the interrogation.   *Stansbury v. California*, 511 U.S. 318, 322 (1994) (*per curiam*).   Determining whether a suspect is "in custody" requires two discrete inquires:  "[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."  *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (internal footnote omitted).   Relevant factors include the duration of questioning, *see Berkemer v. McCarty*, 468 U.S. 420, 437–38 (1984), statements made during the interview, *see Mathiason, 429 U.S. at 495*; *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004); *Stansbury*, 511 U.S. at 325, the presence or absence of physical restraints during questioning, *see New York v. Quarles*, 467 U.S. 649, 655 (1984), and the release of the person at the end of questioning, *see California v. Beheler*, 463 U.S. 1121, 1122–23 (1983) (*per curiam*).[2]

Beverly Cone, an investigator for the State Attorney's Office, testified at the suppression hearing that she received a complaint affidavit about Caraballo and interviewed A.O., the child victim. (Ex. 1, V 1 R 70)  Cone went to speak with Caraballo

---

[2] These precedents, established at the time of the state decision in Caraballo's direct appeal, are collected in *Howes v. Fields*, 565 U.S. 499, 509 (2012).

at his residence on March 8, 2005.  He was not present, and Cone followed Caraballo's wife to the church where Caraballo worked.  His wife went inside to get Caraballo, who met Cone in the lobby.  Cone testified that she identified herself as an investigator with the State Attorney's Office, showed her badge, and asked if she could talk to Caraballo. Cone was not wearing a uniform nor bearing a firearm.  Her handcuffs were not visible, as she kept them in her purse.  Agreeing to speak with her, Caraballo led her to a small office.  Cone told him that she wanted to speak with him about A.O. and get information. After obtaining background information from Caraballo, Cone asked if she could turn on the tape recorder, and Caraballo agreed.  Cone turned on the tape recorder and put it on the desk where she sat across from Caraballo. (Ex. 1, V 1 R 65-68)

Cone described Caraballo as very congenial and talkative.  Cone testified that it appeared to her that he knew he was free to leave.  Caraballo left the room for a short period of time and returned.[3]  (Ex. 1, V 1 R 68-69)  She stated that she did not read *Miranda* rights to Caraballo because he was not in custody. (Ex. 1, V 1 R 74-75)  Having no intention of arresting Caraballo at the time, Cone left the church when the interview concluded. (Ex. 1, V 1 R 69)

Caraballo testified that Cone told him that she was present on account of an accusation against him.  Stating that he knew why she was there, Caraballo testified that "people kept telling me that you know [sic] somebody made something against me."  (Ex. 1, V 1 R 77)  He claimed that this did not bother him because he did not believe it until Cone showed up.  Caraballo acknowledged that he invited Cone back to the office and that he went outside and grabbed a chair for her, explaining that the office was "really

---

[3] Cone could not recall whether Caraballo left to take care of a phone call or whether someone needed to speak with him. (Ex. 1, V 1 R 68-69)

small." (Ex. 1, V 1 R 77)  Caraballo testified that the investigator did not advise him at the beginning of their conversation that he was free to terminate the interview at any time. He claimed that he felt he had no choice other than to speak with her, testifying, "I had no choice.  I felt I had to talk to her.  I was intimidated by her badge, you know, just by her." (Ex. 1, V 1 R 79)  Asked if he felt that he could leave and not return, Caraballo responded:

> Uh, no I didn't feel like that but she did tell me -- well the phone rang.  What happened was the incident where I walked out for a second was the phone rang and I was busy taking care of her [sic]  I didn't want to you know answer the phone and be rude you know and say hold on a second.  I got up gave the phone to -- one of the other workers.  I guess he take [sic] care of this. I got you know something else to do and that's when I went right back inside. I just walked right outside the door and handed the phone and came back in.

(Ex. 1, V 1 R 79-80)  Caraballo acknowledged that Cone had asked if she could talk to him.  He testified that he felt intimidated by the badge, the investigation, and the allegations, and he felt that he should say something.  (Ex. 1, V 1 R 81)  Caraballo was asked, "[b]ut she didn't say anything to make you feel like you should say something?" Caraballo responded, "Well, just about the way she came out saying you know if you don't -- her badge telling me I need to talk to you [sic] this is what's going on you know, basically." (Ex. 1, V 1 R 80-81)  Caraballo acknowledged that he could have told the investigator that he did not want to talk to her.  Yet, he maintained that he did not feel free to tell her that he did not want to do so. (Ex. 1, V 1 R 81-82)

After taking testimony and hearing argument, the state trial court found that the circumstances in Caraballo's case were relatively close to those in *Snead v. State*, 913 So. 2d 724 (Fla. 5th DCA 2005).  In *Snead*, investigators had been invited by Snead's roommate to a trailer where they had a casual conversation with Snead.  After the officers, who were not uniformed, had identified themselves, Snead invited them to have a seat,

and they conversed at a kitchen table, recording his statement with his permission. *Snead*, 913 So. 2d at 724.  The Court in *Snead* agreed with the trial court that Snead was not in custody during questioning.  *Id.*  After setting forth the facts and holding in *Snead,* the state trial court in Caraballo's case found:

> . . . in the present case it seems very similar.  It's –- he's brought to the church by the Defendant's wife.  The investigator is not in uniform, there's no handcuff, no weapon . . . the -- he's invited into -- she's invited into an area . . . and seated there to discuss that…the conversations [sic] tape recorded. . . . I am making a finding -- The Court is finding that the Defendant was not in custody at the time.  That this was not a custodial interrogation.  That there was no necessity for Miranda.  I'm further finding there was no formal arrest.  There is no restraint of movement and although a number of times Defendant has testified here that I was intimated by her badge [sic] [t]he Court's finding that no reasonable person would have felt themselves to be under formal arrest or so restrained of movement to be in custody at the time.  Motion to suppress is denied.

(Ex. 1, V 1 R 91-93)

The record supports the conclusion that Caraballo was not in custody for purposes of *Miranda* when he gave his taped statements to the investigator.  Caraballo met with the investigator in a familiar setting of the church where he worked,[4] and there were no other officers present.  Caraballo asserts that the investigator "flashed" her badge, but he does not show that the investigator, who was not in uniform and not carrying a firearm, did so for any other reason than to identify herself as law enforcement.  Caraballo does not claim that the investigator issued any commands or threatened him when presenting her badge.

---

[4] *See United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006) (Although the location of the interview "is surely not dispositive" in determining whether the interviewee was in custody, "'[c]ourts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings,' such as the suspect's home.") (quotation and emphasis omitted).

Caraballo was not restrained during the interview, another significant factor as to how a reasonable person would view the situation.  It appeared to the investigator that Caraballo knew that he was free to leave, and Caraballo does not deny that he left the office to attend to a matter and returned of his own volition.  Caraballo asserts that the investigator did not tell him that he was free to leave until she completed her questioning. After Caraballo made a number of statements but before questioning had ceased, the investigator asked him, ". . . I didn't make you give me this statement right?"  Caraballo answered, "No no no no."  The investigator stated, "You know you were free to leave [?]" Caraballo responded, "Exactly." (Ex. 1, V 1 R 127; V 4 T 399)  Caraballo continued to speak with the investigator.  Under the totality of the circumstances, a reasonable person would have felt free to leave.  *See United States v. Muegge*, 225 F.3d 1267, 1271 (11th Cir. 2000) ("Under the totality of the circumstances, an innocent individual in Muegge's position who was told he was free to stop answering questions and leave at any time would have actually felt free to do so.").

Caraballo alleges that the manner in which the investigator questioned him was "interrogative" in nature. (Doc. 1 at 5)  He claims that the investigator said that she believed the victim and did not believe certain things he was telling her.  Such, alone, would not support a finding that he was subjected to custodial interrogation.  Caraballo does not allege that the interview was protracted in length, and there is no indication in the transcript of the taped interview that the officer engaged in behavior that would compel compliance.

An additional factor is that Caraballo was not arrested at the conclusion of the interview.  Taking into consideration the relevant factors, a reasonable person in

Caraballo's position would have felt able to terminate the interview at any time and leave. Accordingly, it was reasonable for the state court to conclude that Caraballo was not subjected to a custodial interrogation when interviewed by the investigator, and it was unnecessary to provide him with *Miranda* warnings.

Even if Caraballo's statements were given during a custodial interrogation, the admission of his statements was harmless.  Fifth Amendment violations arising from custodial interrogation are subject to a harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *See e.g.*, *Mansfield v. Sec'y, Dep't. of Corr.*, 679 F.3d 1301 (11th Cir. 2012) (admission of videotape of custodial interrogation by law enforcement officers when Mansfield had not received *Miranda* warnings was harmless under *Brecht*).  There was ample evidence of Caraballo's guilt of sexual battery and lewd battery adduced at trial, including the eyewitness testimony of the child victim, which was corroborated by A.E., a child witness.  In view of this testimony, the admission of Caraballo's statements was harmless, if error, having no substantial and injurious effect or influence in determining the jury's verdict.  *Brecht*, 507 U.S. at 637.

Caraballo lived in a home near an apartment complex where A.O., his mother, and A.O's brother, resided.  A.O. would visit his close friend, J.P., who was Caraballo's stepson, at Caraballo's house, often spending the night. (Ex. 1, V 3 T 186, 191-93) Caraballo moved into an apartment in the complex where the child victim lived.  The State adduced testimony as to five alleged incidents of Caraballo's sexual abuse of A.O., the first of which established Caraballo's guilt of sexual battery.  A.O's testimony about two other incidents established Caraballo's guilt of lewd battery.

A.O. testified that the first incident occurred when he was eleven years old and spending the night at Caraballo's house. (Ex. 1, V 3 T 196-97, 208)  A.O. said that he and J.P. were sleeping on the living room floor.  A.O.'s brother was on a loveseat, and A.O.'s cousin, A.E. was on a big sofa. (Ex. 1, V 3 T 198-200, 243, 246-47)  A.O. testified that Caraballo awoke him by touching the child's private spot.  A.O. tried to get up but Caraballo would not let him. (Ex. 1, V 3 T 201-203, 207)  Caraballo had covered A.O with a blanket and threatened to tell the child's mother that he was "gay." (Ex. 1, V 3 T 207)  A.O. testified that Caraballo made A.O. take out the child's penis, which Caraballo touched with his hand. (Ex. 1, V 3 T 204)  A.O. said that he tried to get someone's attention but did not want to scream because he was scared. (Ex. 1, V 3 T 250).  Caraballo made A.O. put his mouth on Caraballo's penis, and after doing so for five to ten seconds, A.O. pushed Caraballo, who went back to his bedroom. (Ex. 1, V 3 T 205-06)  A.O. went to his cousin's side.  A.O. testified that his cousin saw A.O. crying.  A.O. believed from the look in A.E.'s eyes that his cousin was trying to ask what was "going on."  A.O. testified that he did not answer, bursting in tears again. (Ex. 1, V 3 T 252-54)

After the first incident, A.O. spent the night again in the same home, trusting that Caraballo, whom A.O. called "Dad," would not do it again. (Ex. 1, V 3 T 263)  The second incident occurred around Christmas time, after A.O. turned twelve years of age. (Ex. 1, V 3 T 209-10)  A.O. testified that after he fell asleep in the family room during a movie, he was awakened by Caraballo's touching A.O.'s private spot. (Ex 1, V. 3 T 211-12, 266)  Caraballo made A.O. put his mouth on Caraballo's penis, which stopped after five to ten seconds because the dogs were making some noise. (Ex. 1, V 3 T 214, 268)  A.O. testified

that the other children, J.P., A.E., and A.O.'s brother, were sleeping. (Ex. 1, V 3 T 267-69)

A.O. described another incident that occurred at Caraballo's apartment during the summer between A.O.'s sixth and seventh grade years. (Ex. 1, V 3 T 223)  A.O. testified that Caraballo made A.O. perform oral sex on Caraballo when they were alone in a bedroom on a day that tile work was being done.  (Ex. 1, V 3 T 217, 220-21, 287-88)  This lasted about five to ten seconds until someone knocked at the door. (Ex. 1, V 3 T 221-22) He went to the bathroom to wipe his face so no one would notice that he was crying, and after about five minutes, he went home. (Ex. 1, V 3 T 288-89)

A.O.'s cousin, A.E., testified that during a sleepover at Caraballo's house, A.O. was on the floor of the living room, and A.E. saw Caraballo come in to the living room and lay on the floor by A.O.  A.E. testified that Caraballo took out his "private" and put his hand on the back of A.O.'s head, forcing A.O. "to suck" Caraballo's "private." (Ex. 1, V 3 T 321-23)  Caraballo had a blanket, but A.E. could see Caraballo's face and half his body, as well as A.O.'s head. (Ex. 1, V 3 T 331-32)  A.E. stayed quiet after this happened, and according to A.E., the child victim was not crying.  A.E. was afraid to say anything.  He testified that this incident occurred in the summer time during his second sleepover at Caraballo's house when A.E. was eight years old, and that it was his last time staying overnight at Caraballo's house, as A.E. thought that this would happen again. (Ex. 1, V 3 T 329, 333-34)

A.E.'s testimony differed from that of A.O. on such matters as when the incident occurred and whether A.O. cried.  Nonetheless, A.E.'s observations constituted significant corroboration of A.O.'s testimony that Caraballo forced A.O. to perform oral

sex in the living room of Caraballo's house when the children were staying overnight. In view of the eyewitness testimony which established Caraballo's guilt of sexual battery and lewd battery, admission of his statements, if error, did not have a substantial and injurious effect or influence in determining the jury's verdict

The state court's decision is not contrary to, or an unreasonable application of, federal law as clearly established by the Supreme Court, and the state decision is not based on an unreasonable determination of the facts in light of the evidence. Ground one does not warrant habeas relief.

### Ground Two

Caraballo alleges that his appellate counsel rendered ineffective assistance by failing to argue on direct appeal that the trial court erred in denying his motions for judgment of acquittal. Caraballo first contends that his appellate counsel was ineffective for not arguing that a judgment of acquittal should have been granted because the State failed to establish that the offenses for which he stands convicted were committed within the time frames alleged. (Doc. 1 at 6) Caraballo raised this aspect of this ground in his state habeas petition alleging ineffective assistance of appellate counsel. Citing *In re Winship*, 397 U.S. 358 (1970), Caraballo asserted in his state petition that the elements of sexual battery and lewd battery, and in particular, the time frames during which such were alleged to have occurred, were not proven beyond a reasonable doubt. Asserting that his trial counsel preserved a claim of insufficient evidence for review, Caraballo alleged that his appellate counsel was ineffective for not raising the denial of his motions for judgment of acquittal on direct appeal. (Ex. 7 at pgs. 16-19)

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the federal due process benchmark for evidentiary sufficiency in criminal cases. *Williams v. Sec'y, Dep't of Corr.*, 395 Fed. Appx. 524, 525 (11th Cir. 2010) *(per curiam)* (citing *Green v. Nelson*, 595 F.3d 1245, 1252–53 (11th Cir. 2010)). The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. 319. "When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 463 (11th Cir. 2015), (citing *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

Caraballo's appellate counsel could have reasonably decided that an argument that the State did not adduce the minimum amount of evidence that the Due Process Clause requires to prove the offenses was unavailing in light of the evidence of Caraballo's guilt of sexual battery and lewd battery. Counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

**The State's allegations and evidence as to count one, sexual battery**

Pursuant to an order granting the defense's motion for a statement of particulars, the State filed a response alleging that sexual battery on A.O. occurred between March 1, 2003, and December 1, 2003. (Ex. 1, V 1 R 44) Although Caraballo alleges that the testimony of the child victim and child witness placed the incident as occurring in 2002 (Doc. 1 at 6), the State adduced competent, substantial evidence establishing that

18

Caraballo committed sexual battery in 2003 when the child victim was under the age of 12 and within the time frame set forth in the state's response.

A.O. testified that during the first incident, Caraballo forced him to put his mouth on Caraballo's penis at Caraballo's house and that the incident occurred in April, when the child victim was in fifth grade and 11 years of age. (Ex. 1, V 3 T 195-197, 205-206, 208, 236, 307)  When Caraballo's counsel questioned A.O. as to whether what he said in deposition was the year in question, A.O. testified that he had responded that the year was 2002 or 2003 and that he had answered affirmatively to counsel's statement that he was in fifth grade in 2002. (Ex. 1, V 3 T 240)  Caraballo's counsel asked A.O., "So this first incident occurred in 2002, correct?"  A.O. responded, "Yes, [M]a'am." (Ex. 1, V 3 T 240)  The child victim on redirect examination testified that the first incident occurred in April of his fifth grade year, and that he did not know whether the year was 2002 or 2003. (Ex. 1, V 3 T 302-03)  When the prosecutor went over years in which A.O. was in school, the child victim testified that April of his fifth grade year was in 2003.  A.O. testified that he got confused when asked by defense counsel if he thought the year was 2002.  His redirect testimony showed that until the prosecutor and A.O. went through his years of schooling, A.O. was not sure of the year in which he was in fifth grade in the month of April. (Ex. 1, V 3 T 304-307)

Caraballo's counsel sought a judgment of acquittal on count one, sexual battery, on grounds that although A.O. had been rehabilitated, testimony of A.O. was brought out that he was 10 years old at the time of the first incident.  Also pointing out that A.E. testified that he was eight years old when he saw the first incident and that A.E. was 12 years old at the time of trial, Caraballo's counsel argued that the first incident occurred in 2002,

outside the narrowed time frame alleged by the State.  (Ex. 1, V 4 T 420)  In response, the prosecutor pointed out that A.O. did not know the year he was in fifth grade in the month of April, and that on redirect examination, when they addressed the year, the child victim said that it was 2003. (Ex. 1, V 4 T 426-27)

Caraballo contends his appellate counsel should have argued that the trial court erred in denying his motion for judgment of acquittal on the basis that the testimony of the child victim and the child witness placed the alleged sexual battery offense in 2002. (Doc. 1 at 6)  The State adduced testimony from the child victim that the sexual battery occurred in April of his fifth grade year, when he was eleven years old, and that the year was 2003. Viewing the evidence in the light most favorable to the prosecution, *Jackson*, 443 U.S. at 319, a rational jury could have found based on A.O.'s testimony that Caraballo committed sexual battery during the narrowed time period alleged.  Because the evidence of Caraballo's guilt of sexual battery satisfied the *Jackson* standard, there was no deficiency in appellate counsel's performance in not raising a due process-based argument that the offense was not proven to have occurred within the alleged time frame.

Caraballo next contends that if the sexual battery offense alleged in count one occurred between March 1, 2003, and December 1, 2003, he could not have been found guilty of capital sexual battery, as the child victim would have been 13 years of age. (Doc. 1 at 6)  Caraballo did not specifically allege in his state habeas petition that his appellate counsel failed to raise such an argument. (Ex. 7 at pgs. 16-19)  The Respondent does not raise a procedural default argument against this aspect of Caraballo's ground. (Doc. 11 at 11-13)  Reaching the claim, the Court finds that Caraballo demonstrates no deficiency in appellate counsel's performance.  Caraballo's omitted issue was not

preserved, and even if it were available for review, it is meritless.  A.O. was under the age

of 12 during the period in which the State alleged the sexual battery offense occurred.

(Ex. 1, V 1 T 44; V 3 T 197)

**The State's allegations and the evidence as to count three, lewd battery**

Count three of the Information alleged that between December 2, 2003, and July

1, 2004, Caraballo committed lewd battery on A.O., a child 12 years or older and less

than 16 years of age, by uniting Caraballo's sexual organ with the mouth of A.O. (Ex. 1,

V 1 R 32) The State's response to the order granting Caraballo's motion for statement of

particulars left this time frame intact. (Ex. 1, V 1 R 44)

Asserting that "lewd touching" was alleged by the child victim to have occurred

"exclusively" when the victim was working with Caraballo on the day that tile was being

installed, Caraballo asserts that proffered defense testimony of Chris Barry established

that the tile work was done in late 2004 and no earlier than August 2004.  Caraballo

concludes that his appellate counsel was ineffective for not arguing that a judgment of

acquittal should have been granted on that basis. (Doc. 1 at 6)  In Caraballo's state

petition alleging ineffective assistance of counsel, he claimed that there was no evidence

to contradict the testimony of Caraballo and Chris Barry, although he noted that Barry's

testimony was excluded. (Ex. 7 at p. 18)  Caraballo asserted that the evidence, viewed in

the light most favorable to the prosecution, did not establish the elements of his lewd

battery offense beyond a reasonable doubt. (Ex. 7 at pgs. 18-19)  To the extent Caraballo

alleged in his state petition and is asserting here that his appellate counsel should have

raised an argument that the trial court should have granted a judgment of acquittal based

on Barry's proffered testimony, no deficiency in appellate counsel's performance is

shown.  Caraballo's trial counsel did not seek a judgment of acquittal based on Barry's proffered testimony.

At the close of the State's case, Caraballo's trial counsel argued that there was inconsistent or contradictory testimony as to what occurred in the second incident at Caraballo's house, in which A.O. testified that Caraballo forced A.O. to put A.O.'s mouth on Caraballo's penis.  Asserting that A.E. testified that he was not present for a second sleepover in which a sexual incident occurred, Caraballo's counsel argued that by implication, the first incident was the only sleepover during which A.E. witnessed what A.E. said occurred. (Ex. 1, V 4 T 422)  Trial counsel further argued that there was a question when the second incident at Caraballo's house occurred.  Contending that A.O. believed such occurred around Christmas and there was a dispute as to whether it was Christmas of 2002 or 2003, Caraballo's counsel argued that the second incident occurred at Christmas 2002, outside the time frame alleged for count three. (Ex. 1, V 4 T 422)  As to another incident involving oral sex, which A.O. testified occurred at Caraballo's apartment when tile work was being done, trial counsel argued that there was testimony that such occurred in the summer and that the incident may have occurred after July 1, 2004. (Ex. 1, V 4 T 424-25)

The State adduced sufficient testimony at trial to establish that Caraballo committed lewd battery by forcing A.O. to perform oral sex on Caraballo during the alleged time frame at Caraballo's house when A.O. was 12 years of age.  A.O. testified that during a sleepover, after A.O. turned 12 years of age (Ex. 1, V 3 T 208-210, 212), Caraballo put his penis in A.O.'s mouth.  A.O. testified that the incident occurred around Christmas time, after he had turned 12 years of age. (Ex. 1, V 3 T 208-09)  On cross examination, the

child victim was asked, "Now you had stated that you felt that this occurred around Christmas time of 2002, correct?   A.O. responded, "Yes." (Ex. 1, V 3 T 274-75) Nonetheless, A.O.'s testimony established that the incident in question occurred after the first incident of sexual abuse of A.O. by Caraballo (Ex. 1, V 3 T 208-09), and as discussed *supra*, A.O.'s redirect examination testimony established that the first incident occurred in 2003.  Viewing the evidence in the light most favorable to the State, a rational jury could find from A.O.'s testimony that Caraballo committed lewd battery on A.O. during the alleged time frame at Caraballo's house after the child victim turned 12 years of age.

A.O.'s testimony also showed that Caraballo committed lewd battery by forcing the child victim to perform oral sex at Caraballo's apartment after the child victim turned 12 years old and during the summer between A.O.'s sixth and seventh grade years and about two and half weeks before he went to Puerto Rico. (Ex. 1, V 3 T 223)  A.O. testified this incident occurred when he was helping to remove some wood in a bedroom.  His brother had been installing tiles in the living room. (Ex. 1, V 3 T 220)  Although Caraballo's trial counsel argued at the close of the State's case that the crime may have occurred after July 1, 2004 (Ex. 1, V 4 T 425), the evidence, viewed in the light most favorable to the State, was sufficient for a rational jury to find that Caraballo committed this incident within the alleged time frame.

Caraballo on cross-examination testified that before he moved in his apartment, he did the tile work "at the end of June, beginning of July." (Ex. 1, V 5 T 534-35)  At the close of the defense's case, Caraballo's counsel argued that there was testimony that the tile work was conducted in "June, July of 2004." (Ex. 1, V 5 T 557)  To the extent Caraballo claimed in his state habeas petition and is alleging here that he was entitled to a judgment

of acquittal based on his own testimony, he has failed to show any deficiency in counsel's performance in not raising such an argument.  Under *Jackson*, the prosecution does not have an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt.  When the record reflects facts that support conflicting inferences, it is presumed that any conflicts in the evidence were resolved by the jury in favor of the prosecution.  443 U.S. at 326.

Caraballo's testimony indicated that the tile work at his apartment could have been done at the end of June, which was within the time frame alleged on the lewd battery count.  That aside, the State adduced sufficient evidence to establish that Caraballo committed sexual battery on A.O. at Caraballo's house and lewd battery on A.O. at Caraballo's house and apartment within the time periods alleged.  Accordingly, there is a reasonable basis on which to deny this ground on *Strickland*'s performance prong.

The state court could deny relief on *Strickland*'s prejudice prong without reaching the first prong.  It was not reasonably probable that Caraballo would have prevailed on appeal had his appellate counsel raised his arguments, as the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Caraballo committed sexual battery and lewd battery on A.O. within the alleged time periods.

To the extent Caraballo is claiming that a judgment of acquittal should have been based on Florida law, the state court by its denial of Caraballo's ground has answered the question of what would have happened under state law had appellate counsel raised Caraballo's proposed arguments.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [counsel] done what [Petitioner]

24

argues he should have done . . .").  It is a "'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"  *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).  Caraballo failed to establish that his omitted argument was meritorious under state law, and thus, Caraballo cannot show that counsel's performance in not raising the argument was deficient to his prejudice.  *See Philmore v. McNeil*, 575 F.3d 1251, 1265 (11th Cir. 2009) ("Nor can Philmore establish any prejudice from his attorney's omission since the Florida Supreme Court already concluded that "the trial court's rejection of this statutory mitigator is supported by competent substantial evidence.").

Caraballo does not show that the state decision on his claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, *Strickland*, and he does not demonstrate that the decision is based on an unreasonable determination of the facts in light of the evidence.  Ground Two does not warrant habeas relief.

### Ground Three

Chris Barry in 2004 became the manager of the apartment complex where the child victim's family resided.  Caraballo alleges that his appellate counsel rendered ineffective assistance by not raising a claim that the trial court reversibly erred by excluding Barry's testimony, which Caraballo claims was relevant and material to establish a dispositive time line as to count three, lewd battery. (Doc. 1 at 8)  According to Caraballo, Barry's proffered testimony contradicted the child victim's testimony that he was afraid of Caraballo's authority to evict the child's family.  Caraballo asserts that Barry stated that Caraballo was not a manager or employed as a maintenance man at the apartment where the victim's family lived.  Caraballo further alleges that Barry was the

apartment manager who hired Caraballo to do tile work at the apartments, and that Caraballo did the tile jobs at the apartments in late 2004, outside the time frame alleged in count three of the charging document.  (Doc. 1 at 8)  Citing *California v. Trombetta*, 467 U.S. 479 (1984), Caraballo claims that the trial court's exclusion of Barry's testimony as irrelevant deprived Caraballo of a meaningful opportunity to present a complete defense, and Caraballo contends that appellate counsel's alleged omission resulted in a deprivation of due process. (Doc. 1 at 9)  Caraballo raised this ground in his state habeas petition as a claim of ineffective assistance of appellate counsel.

The Constitution guarantees criminal defendants "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. at 485.   However, a defendant's right to present a defense is not unlimited.  "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (*quoting United States v. Scheffer*, 523 U.S. 303, 308 (1998)).  *See also Clark v. Arizona*, 548 U.S. 735, 770 (2006) ("[T]he right to introduce relevant evidence can be curtailed if there is a good reason for doing that.").  Evidentiary rules do not abridge a criminal defendant's right to present a defense as long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Scheffer*, 523 U.S. at 308 (quotation omitted).  "While the Constitution . . . prohibits the exclusion of evidence under rules that serve no legitimate purpose or are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Clark*,

548 U.S. at 770 (quoting *Holmes*, 547 U.S. at 326).   Referring to rules of this type, the Supreme Court has stated that the Constitution permits judges "to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"   *Holmes,* 547 U.S. at 326 (quoting *Crane*, 476 U.S. at 689–90); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

During a proffer, Barry testified that in April 2004, he became the property manager of the apartment complex where the victim's family lived.   Barry testified that he believed that Caraballo moved in the complex in June 2004, "give or take a month maybe."   He testified that Caraballo did some side jobs for Barry.  (Ex. 1, V 4 T 431, 433-34)  According to Barry, it was probably toward the end of 2004 when Caraballo did work for Barry.   He testified that Caraballo was not hired as a maintenance man and had no authority to manage the complex or evict residents. (Ex. 1, V 4 T 432-34)  Pointing to A.O.'s testimony that he feared that Caraballo could have his mother evicted, Caraballo's counsel submitted that Barry's testimony would go to the credibility of the child victim.   The prosecutor countered that Barry's testimony was irrelevant because it did not rebut the victim's testimony that he was afraid that Caraballo could have his family evicted. Observing that Barry did not testify that he communicated the status of Caraballo to the child victim, the state court disagreed that Barry's testimony rebutted that of the child victim and excluded Barry's testimony as irrelevant. (Ex. 1, V 4 T 436-38)

Caraballo's appellate counsel could have reasonably declined to raise a federal due process issue regarding the evidentiary ruling, as the trial court was not asked to rule

on a claim that exclusion of Barry's testimony would deprive Caraballo of constitutional due process.  However, if a due process issue were available for review, Barry's testimony did not tend to show that the child victim was untruthful in his personal belief that Caraballo could have the victim's family evicted.

Caraballo also claims that Barry's testimony would have established that the tile work that Caraballo did for Barry occurred outside the time frame alleged for the lewd battery offense alleged in count three. (Do. 1 at 8)  Barry's testimony was not offered for that purpose, and Caraballo's appellate counsel could have reasonably concluded that the state court would not hear the argument.  Because Barry's testimony was not shown to be relevant for the purpose offered at trial and his testimony was not offered to show that lewd battery could not have occurred within the time period alleged, Caraballo failed to show any deficiency in appellate counsel's performance in not raising a due process argument as to the exclusion of Barry's testimony.

The state court could have denied relief on Caraballo's ground on the prejudice prong of *Strickland,* and thus, it need not have reached the performance prong.  By its decision, the state appellate court has answered the question of what would have happened under state law had appellate counsel argued that Barry's testimony was relevant and admissible to refute the child victim's testimony that he feared that Caraballo could have his family evicted.  Deference is due the state court's determinations based on state law.

As to Caraballo's federal due process claim, the Supreme Court in *Nevada v. Jackson*, stated that "rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."  133

S. Ct. 1990, 1992 (2013) (citations omitted).  Caraballo's case does not present one of those rare instances.  He had no unfettered right to introduce irrelevant testimony, and Florida's evidentiary rule precluding admission of irrelevant impeachment evidence such as that offered by Caraballo was not disproportionate to the purpose the rule served.  The proposed testimony posed an undue risk of prejudice to the State and/or confusion to the jury, as Barry said nothing about the child's knowledge as to whether Caraballo had authority to evict the child's family.  *See Troy v. Sec'y, Fla. Dep't of Corr.*, 763 F.3d 1305, 1307 (11th Cir. 2014) (". . . while the Fourteenth Amendment ensures a meaningful opportunity to present a complete defense, state courts may 'exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability.'") (quoting *Crane*, 476 U.S. at 690).

Even if Barry's testimony was relevant, the state court's evidentiary ruling did not "fatally infect[ ] the trial" so as to justify habeas relief.  *Lisenba v. California*, 314 U.S. 219, 236 (1941).  To render a state-court proceeding fundamentally unfair, the excluded evidence must be "material in the sense of a crucial, critical, highly significant factor." *Boykins v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir.1984) (quotation and citations omitted).  Caraballo fails to show that the evidentiary ruling deprived him of a fundamentally fair trial.  Barry did not testify that the child victim knew that Caraballo had no authority to evict his family.

Moreover, the state court's ruling did not prevent Caraballo from cross-examining the child victim on such matters as the child's reasons for not reporting the sexual abuse earlier or as to when the incident in the bedroom of the apartment occurred.  Nor did the state court's ruling prevent Caraballo from presenting his defense that the child was the

instigator of inappropriate touching and that Caraballo had not committed the charged offenses.  Also, given Caraballo's testimony that he could have done the work at the apartment at the end of June or beginning of July (Ex. 1, V 5, T 534-35), Caraballo fails to show that it was reasonably probable that he would have prevailed on appeal had his appellate counsel argued that exclusion of Barry's testimony deprived Caraballo of due process.

The state decision on Caraballo's ground is not contrary to, or an unreasonable application of, *Strickland* and is not based on an unreasonable determination of the facts in light of the evidence.  Ground Three does not warrant habeas relief.

**Ground Four**

Caraballo alleges that his appellate counsel was ineffective for not arguing that Caraballo's sexual battery conviction violated the Sixth and Fourteenth Amendments. Alleging that capital crimes in Florida require an indictment and a 12-person jury, Caraballo claims that he was denied due process when he was tried by petit jury on an information.   Caraballo also alleges his sexual battery conviction violated the notice requirement guaranteed by the Due Process Clause.  (Doc. 1 at 23)  He raised this ground in his state habeas petition alleging ineffective assistance of appellate counsel.  The state court had a reasonable basis on which to deny relief on *Strickland*'s performance prong. Caraballo's federal due process claims were not preserved for review[6] and are meritless.

---

[6] Although *Caraballo points to his state habeas petition in which he alleged that his appellate counsel should have raised his claims as fundamental error (Ex. 7 at p. 12), Caraballo did not demonstrate that his trial by petit jury on the information constituted fundamental error.  *See Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1328, n.3 (11th Cir.) (noting that Florida's doctrine of fundamental error permits a court to review an issue that was not preserved in the trial court), *cert. denied sub nom. Rambaran v. Jones*, 137 S. Ct. 505 (2016).

Florida courts have held that sexual battery on a child, although defined as capital sexual battery, is not a capital offense in the sense that it is not subject to the death penalty.  Therefore, a twelve-person jury is not required.  *See Buford v. State*, 403 So. 2d 943 (Fla. 1981) (holding that death cannot be imposed for sexual battery of child), *cert. denied*, 454 U.S. 1163 (1982); *Huffman v. State*, 813 So. 2d 10, 12 (Fla. 2000) (explaining "even if a felony is classified in the Florida Statutes as a capital offense, it is not 'capital' under case law unless its subject to the death penalty"); *State v. Hogan*, 451 So. 2d 844, 845–46 (Fla. 1984) ("Sexual battery of a child, therefore, while still defined as a 'capital' crime by the legislature, is not capital in the sense that a defendant might be put to death. Because the death penalty is no longer possible for crimes charged under subsection 794.011(2), a twelve-person jury is not required when a person is tried under that statute.").

Caraballo contends that he was denied a due process right to an indictment and trial by a 12-member jury. (Doc. 1 at 10)  Indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury.").  Additionally, the Supreme Court has held that a state's refusal, under state law, to provide a defendant with more than a six-person jury does not violate the Sixth Amendment as applied to the states through the Fourteenth Amendment.  *See Williams v. Florida*, 399 U.S. 78, 96–103 (1970) (concluding that petitioner's Sixth Amendment rights, as applied to the states

through the Fourteenth Amendment, were not violated by Florida's decision to provide a six-man rather than a 12–man jury).

Caraballo claims that his sexual battery conviction violated the "notice requirement" guaranteed by the Due Process Clause, but he offers no specifics, only citing *Goss v. Lopez,* 419 U.S. 565, 579 (1975) (students facing suspension . . . must be given "some kind of notice and afforded some kind of hearing"). (Doc. 1 at 10)  Due process requires that a criminal defendant receive notice of the specific charge and a chance to be heard in a trial of the issues raised by that charge.  *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).  The information gave Caraballo notice of the nature of the charges sufficient for him to prepare a defense.  Because relief on his claim of ineffective assistance of appellate counsel can be denied on *Strickland*'s performance prong, the state court need not have addressed the prejudice prong.

Caraballo has not shown the state court's decision was contrary to, or involved an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Ground four does not warrant habeas relief.

**Ground Five**

Caraballo, in ground five, contends that his trial counsel rendered ineffective assistance by failing to investigate and present character evidence to rebut allegations that Caraballo is manipulative and dishonest.  In his supporting facts, he alleges that the victim's mother testified that "he [Caraballo] know [sic] how to manipulate my son and how to shut him up." (Doc. 1 at 12)  Caraballo also alleges that the child victim testified that, "if he lies about his own step-kids he can lie about me" and "I know him to make up

stuff." (*Id.*)  Caraballo asserts that once his character was attacked, his trial counsel had a duty to investigate by asking Caraballo if there were any character witnesses who could be contacted on short notice who would be able to attend trial and testify as to Caraballo's good character and trustworthiness around children.  According to Caraballo, there were numerous character witnesses who were available and willing to testify, but he names only two of these individuals.  Caraballo asserts that Pablo Chaparro and his wife Carmen were available to testify that they co-owned a day care center and had known Caraballo since 1996 and that he had assisted them many times with "absolutely no hint of anything inappropriate." (Doc. 1 at 12)

The Respondent asserts that this ground is unexhausted and that unexhausted grounds in the instant petition are barred. (Doc. 11 at 19, 29)  This ground is unexhausted and procedurally barred because Caraballo did not raise this ground on postconviction appeal.  Caraballo raised this ground in his Rule 3.850 motion, and the trial court denied relief after an evidentiary hearing.  On appeal, his collateral counsel raised claims that were summarily denied but did not raise and brief this ground, thereby waiving it.  Where, as here, a petitioner received an evidentiary hearing on a claim raised in his postconviction motion, he was required to file an appellate brief in appealing the trial court's denial of the motion. *See* Fla. R. App. P. 9.141(b)(3).  Caraballo's failure to raise and address this ground in his brief constituted a waiver of the ground in the state court. *See*, *e.g.*, *Sweet v. State*, 810 So. 2d 854, 870 (Fla. 2002) (holding that claims raised on appeal from order denying post-conviction relief were not preserved where Sweet merely recited claims in a sentence or two, without elaboration or explanation); *Duest v. Dugger*, 555 So. 2d 849 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in

support of the points on appeal.  Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").

Caraballo cannot raise this ground in an untimely second appeal, *see* Fla. R. Crim. P. 3.850(k), or in an untimely and successive Rule 3.850 motion.  Consequently, this ground is procedurally defaulted.  Caraballo does not allege and demonstrate cause and prejudice excusing the default, and he cannot meet the "fundamental miscarriage of justice" exception because he has no new and reliable evidence that he is actually innocent.  *Schlup*, 513 U.S. at 327.  Because he does not satisfy an exception to excuse his procedural default, ground five is procedurally barred from federal review.

Notwithstanding his default, Caraballo is not entitled to relief on this ground. Caraballo fails to show any deficiency in trial counsel's investigation or decisions as to defense witnesses.  Caraballo called a number of witnesses at the evidentiary hearing but did not present testimony of Pablo and Carmen Chaparro.  As to his witnesses who testified, Caraballo did not establish that any would have offered admissible testimony. In denying relief on Caraballo's ground, the state trial court found that the witnesses, who testified as to their personal beliefs that Caraballo was honest, did not have knowledge of his reputation in the community for truthfulness.  Applying state law, the trial court held that the witnesses would not have been permitted to testify.[7]  (Ex. 16, R 301)  Because Caraballo did not demonstrate that his trial counsel failed to investigate and call at trial a

---

[7]In Florida, ". . . a foundation must first be laid to establish that the person testifying as to the witness's reputation is aware of the witness's reputation for truthfulness in the community."  *Morrison v. State*, 818 So. 2d 432, 449 (Fla. 2002) (quoting *Lott v. State*, 695 So. 2d 1239, 1242 (Fla. 1997) (internal citation omitted).  "Reputation evidence must be sufficiently broad-based and should not be predicated on 'mere personal opinion, fleeting encounters, or rumor.'" *Lott*, 695 So. 2d at 1242 (internal quotation omitted).  The trial court cited *Lott* in determining that the witnesses called by Caraballo at the evidentiary hearing did not have broad-based knowledge of his reputation. (Ex. 16, R 301)

witness who would have been permitted to testify, the state court could reasonably conclude that Caraballo failed to show deficiency in counsel's investigation or decisions regarding which witnesses to call at trial.   Accordingly, ground five does not warrant habeas relief.

**Ground Six**

Caraballo contends in ground six that his trial counsel was ineffective for failing to impeach A.E. with contradictory statements.   Asserting that A.E. testified that he saw Caraballo force the victim to perform oral sex, Caraballo claims that A.E's testimony was the only evidence corroborating any of the child victim's allegations.   Caraballo alleges that A.E. made statements denying that he witnessed any inappropriate behavior or sexual contact between Caraballo and the child victim to Officer Trageser with the Haines City Police Department and to Thia Lomax ("Ms. Lomax" or case coordinator") with the Children's Home Society. (Doc. 1 at 13)   Caraballo claims that his trial counsel failed to call the officer as a defense witness and that his counsel failed to establish the predicate necessary to adduce statements of A.E. to the case coordinator.   Caraballo raised this ground in his Rule 3.850 motion and on postconviction appeal.

The trial court summarily denied Caraballo's claim of ineffective assistance of counsel, finding that there was no basis to impeach A.E. because his prior statements were consistent.   Citing to A.E.'s deposition as well as that of the officer and the case coordinator, the state court found that the prior statements were not directly in conflict with A.E.'s deposition or trial testimony and did not constitute evidence of a prior inconsistent statement.   The state court concluded that because there was no legal basis to impeach A.E., Caraballo's counsel could not have been ineffective for not doing so.

(Ex. 12, R 73)  The affirmance by the appellate court is due deference as an adjudication on the merits.

### Alleged failure of counsel to call the officer on behalf of the defense for impeachment of A.E. by prior inconsistent statement

The record shows that Caraballo's counsel elicited on cross-examination of Detective Trageser an out-of-court statement of A.E. before the prosecutor objected. Caraballo fails to demonstrate that his counsel was constitutionally required to call the detective as a defense witness to testify further as to A.E.'s out-of court statements.

Detective Trageser testified at deposition that A.E. said that he spent the night at Caraballo's house with the victim, that they were sleeping in the living room and that he was awakened and saw the child victim was under the covers with someone.  The officer testified that he thought that A.E. was not sure at first until the person got out of the covers. (Ex. 12, R 118)  The officer was asked if A.E. said that he actually saw anything, and the officer responded, "[a]ccording to him, I don't believe he actually saw any private parts or anything in that manner.  But he did state that he was –- he could hear them talking. (Ex. 12, R 118)  At trial, Detective Trageser testified on cross-examination that "[a]ll I knew [sic] that [A.E.] knew very little about it, because [A.E.] did not state that he had seen anything. All he knew —". Trial counsel asked, "[h]e stated he didn't see anything?"  No objection was made to this question.  The detective responded, "Correct."  The detective also testified that A.E. stated that A.O. told A.E. not to say anything. (Ex. 1, V 4 T 350)  Caraballo's counsel asked the officer again, ". . . [h]e stated he didn't see anything?"  She answered, "[h]e seen [sic] them under the covers." (Ex. 1, V 4 T 350)  The prosecutor objected, and a bench conference ensued during which trial counsel submitted that he was just repeating what the officer had stated and that such was for impeachment

purposes.  The trial court stated, ". . . then call this person as an impeachment witness when you get ready to put on your case." (Ex. 1, V 4 R 351)

Caraballo asserted in his postconviction motion that valuable impeachment evidence was not fully presented to the jury when his counsel did not call the officer as a defense witness. (Ex. 11 at p. 11)  In order to introduce a prior inconsistent statement, the prior statement "must either directly contradict or be materially different from the expected testimony at trial.  The inconsistency must involve a material, significant fact rather than mere details." *Pearce v. State*, 880 So. 2d 561 (Fla. 2004).  Caraballo's counsel elicited statements of A.E. to the detective, and Caraballo did not establish that any other statement of A.E. to the officer would have directly or materially contradicted A.E.'s trial testimony.

Caraballo alleges that the officer in deposition said that A.E. did not see any private parts or anything in that manner. (Doc. 1 at 13)  A.E. testified at trial that Caraballo took out his private, but the child witness also testified on cross-examination that Caraballo's private was in the blanket (Ex. 1, V 3 T 331), and it is not unreasonable to determine that a statement that A.E. had not seen any private parts was not materially different from A.E.'s testimony at trial, as A.E. could have perceived that Caraballo had taken out his penis and forced A.O. to commit oral sex without seeing Caraballo's penis.

Moreover, Caraballo merely second guesses his counsel's decisions as to which witnesses to call on behalf of the defense.  Utilizing the detective's testimony on cross-examination, trial counsel argued that A.E. told Detective Trageser that nothing happened. (Ex. 1, V 5 T 607)  In view of counsel's cross-examination of the detective and argument, it is reasonable to conclude that counsel's performance satisfied *Strickland*.

Caraballo fails to establish *Strickland* prejudice, merely leaving to speculation that A.E. would have been discredited. *See id.*, 466 U.S. at 693 (". . . [A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."). Given that the jury heard testimony from the detective that A.E. said that he had not seen anything, the state court could reasonably conclude that had counsel called the detective and adduced testimony that A.E. said he had not seen any private part, there was no reasonable probability of a different outcome.

**Alleged failure of counsel to adduce prior statements of A.E. to the case coordinator**

Caraballo alleges that A.E. gave an account to Ms. Lomax that contradicted his trial testimony. (Doc. 1 at 13) When Caraballo's counsel asked the case coordinator at trial what A.E. told her, the prosecutor objected on grounds of hearsay and on the basis that trial counsel had not asked A.E. about what he told the case coordinator. Trial counsel's remarks during an ensuing bench conference show that counsel was attempting to establish a motive or bias on A.E.'s part. Caraballo's counsel stated that when the coordinator asked A.E. why he was there, A.E. did not respond that his cousin was alleging that someone touched him. Rather, counsel stated, A.E. responded that some guy did things to his cousin which he did not want him to do and that A.E. stated, "I am the proof." (Ex. 1, V 4 T 472) Trial counsel argued that such statement showed bias, motive or an interest in the case on the part of A.E. Counsel could not recall whether she had asked A.E. if he made the statement, and the trial court found a predicate was lacking and sustained the objection. (Ex. 1, V 4 T 472-73)

Caraballo in his Rule 3.850 motion alleged that his trial counsel failed to establish a proper predicate for admission of A.E.'s prior statements to the case coordinator. (Ex. 11 at 12)  Although Caraballo claimed that A.E. had stated to Ms. Lomax that he had not seen anything occur at Caraballo's house (Ex. 11 at p. 11), her deposition shows otherwise.  During her deposition, the case coordinator read a summary of her interview with A.E. contained in her report, testifying:

> . . . . [A.E.] stated that the reason that he came to the Children's Advocacy Center was because he was there when Ricardo Caraballo did something to his cousin [A.O].
>
> According to [A.E.], an adult male friend of the family named Ricardo made his cousin [A.O.] suck Ricardo's penis.  [A.E.] said that this happened three years ago in the living room of a white house in Haines City that Ricardo lived in.  [A.E.] said that he saw Ricardo force his penis into [A.O.]'[s] mouth and that he saw [A.O.] pull away from Ricardo.

(Ex. 12, R 103-04)  Based on her deposition, it is reasonable to conclude that trial counsel could not have established that the child witness denied seeing anything to the case coordinator.  Moreover, it is reasonable to determine that A.E.'s statements to the case coordinator about what he had witnessed did not differ materially from A.E.'s testimony at trial.  It is reasonable to conclude that Caraballo failed to show any deficiency in counsel's performance as to A.E.'s statements to the case coordinator.

Caraballo also failed to satisfy *Strickland*'s prejudice prong.  Caraballo's counsel capably focused the jury's attention on inconsistencies between A.E.'s account and that of A.O. through counsel's cross-examination of the children and closing argument.  Also, given A.O.'s testimony and the inculpatory aspects of Caraballo's statements to the investigator, Caraballo fails to show that there was any reasonable probability of a different outcome had counsel adduced statements of A.E. to the case coordinator.

The state court's decision is not contrary to, or an unreasonable application of, *Strickland* and does not involve an unreasonable determination of the facts in light of the evidence.   Ground six does not warrant habeas relief.

**Ground Seven**

**Subclaim A**

Caraballo alleges in subclaim A of ground seven that his trial counsel was ineffective for failing to object and move for new trial when investigator Cone insinuated that Caraballo admitted guilt during his taped statement. (Doc. 1 at 15)  Caraballo asserts that his jury heard his taped statements while investigator Cone was on the stand, and after the recording was played, Cone testified that she employed investigative techniques to elicit an admission from Caraballo.  Caraballo claims that he never admitted anything, and he maintains his innocence. (Doc. 1 at 15)

Caraballo, in his Rule 3.850, motion asserted that Cone had insinuated that Caraballo admitted guilt during this exchange between the prosecutor and Cone:

Q.  Ms. Cone, the taped statement that was just played, the conversation that you had with Mr. Caraballo --

A.  Yes.

Q.  -- during the conversation that you had with him his answers to your questions changed but your pattern of questioning also changed.  Why did your pattern of the way you were questioning him or the questions that you were asking of him changed [sic]?

A.  I sensed that I needed to go in a different direction with him.  He was not admitted [sic] at first.  If you recall he at first almost said that he had never been around the victim.  So I had to start changing and sort of shifting responsibility for any kind of contact on to the victim, on to the child.

Q.  And why would you do something like that in your experience as an investigator, as an officer?

A.   When you put the -- especially in these kind of investigation where there's kids involved, if you put it on them, on the child, it makes the adults feel less responsible for what happened, and then they will admit more, which he did.

(Ex. 1, V 4 R 410-11)

Caraballo in his Rule 3.850 motion alleged that prior to publishing the taped statement and furnishing a copy of the transcript of the statement to the jury, the state trial court advised the jury that certain things on the tape were redacted.  He then alleged that a reasonable juror could have inferred from Cone's "opinion/bolstering" testimony that Caraballo made incriminating statements not on the tape, as Cone stated that Caraballo did "admit more."  According to Caraballo, the prosecutor's line of questioning of Cone was intended to impress on his jury that Cone with her investigative experience was able to elicit an admission of guilt from Caraballo when such was not the case.  Caraballo claimed that he was never alone with A.O. and there was no evidence that anything occurred at any location where others were not on the premises. (Ex. 11 at pgs. 15-16)

The Respondent asserts that subclaim A is unexhausted and procedurally barred because Caraballo did not raise on postconviction appeal his claim that his counsel should have objected or moved for mistrial on grounds that the officer insinuated that Caraballo had admitted guilt.  (Doc. 11 at 23)  In his appellate brief, Caraballo's collateral counsel set forth his allegations in his Rule 3.850 motion and asserted that he had argued that the state trial court's comment regarding the redaction of the taped interview, together with the testimony of law enforcement witnesses, could have led the jury to assume that there were more incriminating statements on the recording. (Ex. 17 at pgs. 3-4, 26) Caraballo did not, however, argue on appeal that his trial counsel should have objected

or sought a mistrial on the basis that the investigator had insinuated that Caraballo admitted his guilt.  The argument advanced was that trial counsel was ineffective for failing to object to the trial judge's remark about the redaction. (Ex. 17 at pgs. 26-28)

The Court finds that subclaim A is unexhausted and procedurally barred. Caraballo did not fairly present on postconviction appeal a claim that trial counsel was ineffective for not objecting or moving for mistrial on the basis that the investigator insinuated that Caraballo admitted his guilt to her.   As a result, Caraballo waived and defaulted subclaim A.    Caraballo cannot raise this claim in an untimely, second postconviction appeal or in an untimely and successive postconviction motion.  Caraballo does not allege and show cause or prejudice to excuse his default.  Although he contends that he is innocent, Caraballo cannot meet the fundamental miscarriage of justice exception, as he has no new and reliable evidence of actual innocence.

Notwithstanding the default, Caraballo is not entitled to relief on this claim.  He fails to show any deficiency in counsel's performance in not objecting or seeking a mistrial based on the investigator's testimony.   The state trial court in summarily denying the ground before it held as follows:

> In response to claim 3, the Court finds that a clear reading of Detective Cone's trial testimony and the trial transcript of the taped statement's publication to the jury establishes that Defendant did, in fact, admit more facts and physical contact with the victim by the conclusion of the interview that he did initially.   *See* T.T. at 410-18 and 367-403, respectively.   In addition, defense counsel, during cross examination, established that any admissions or statements regarding physical contact between the Defendant and the victim had been published.   *See* T.T. at 413.   Defense counsel also established for the jury that Defendant had never admitted to forcing the victim to have sexual contact with him and never admitted to having sexual contact with the victim.   *See id.*  Based on the foregoing, the Court finds there would have been no legal basis to move for a mistrial or a new trial as argued by Defendant and, hence, counsel

could not have been ineffective for failing to do so.   *Teffeteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999).

(Ex. 12, R 73)

Caraballo's ground can be denied on *Strickland*'s performance prong.   The transcript of Caraballo's taped statement shows that Caraballo initially stated that he did not know why the child victim would make the allegations. (Ex. 1, V 4 T 368) He claimed they watched movies, but he said that he would not be on the floor with the children at the time. (Ex. 1, V 4 R 371)   Caraballo subsequently made statements as to supposed behavior of the child involving contact, and he claimed not to remember the child's putting his mouth on Caraballo's penis.

Caraballo told the investigator that the victim told Caraballo that he had a dream that he was sucking Caraballo's penis. (Ex. 1, V 4 T374)  Caraballo told her that the child victim tried to caress him and that the victim kissed his cheek and caressed Caraballo. (Ex. 1, V 4 T 378-79)  Caraballo said that the victim kept going up Caraballo's shorts, that he told the victim to stop, that the second time, Caraballo said to the victim, "I told you to stop several times already", and the third time, the child got higher and Caraballo got up and walked away. (Ex. 1, V 4 T 381)   Upon further questioning, Caraballo told the investigator that the child victim touched Caraballo's testicles. (Ex. 1, V 1 T 382, 384)  He also said that the child victim would look at him, making Caraballo feel uncomfortable, and that he told his wife that the victim was flirting with him. (Ex. 1, V 4 T 386)  Caraballo also told the investigator that the victim said that in his dream, they were "sucking" each other's penis, and that is what the victim said he wanted to do. (Ex. 1, V 4 T 388) Caraballo further stated that he had been under a blanket in the living room and that A.O. got under the blanket.  Caraballo claimed that he was on his side and that A.O. put his

arm on him and Caraballo awoke, took the victim off of him and left.  Caraballo went on to state that he thought the victim was trying to feel Caraballo's penis. (Ex. 1, V 4 T 291-93)  Caraballo also stated that he guessed that the victim was attempting to put his mouth on Caraballo's penis.  According to Caraballo, the victim was inching down Caraballo's back, and Caraballo left. (Ex. 1, V 4 R 394)

Subsequently, Caraballo told the investigator that he did not remember the victim's putting his mouth on Caraballo's penis.  (Ex. 1, V 4 T 398)  Caraballo stated, "if he did I didn't remember.  I don't remember to be honest with you.  I don't remember him putting his –- it probably did but I don't remember to be honest.  If it did, if he did it he must have did it when I was asleep or something, because I don't remember . . ." (Ex. 1, V 4 T 397)[9]

The record shows that Caraballo made statements as the interview progressed which were inculpatory in nature.  Caraballo initially claimed not to know any reason why A.O. would make a statement against him.  However, he subsequently gave a number of details as to purported statements and behavior of the child victim, and in so doing, Caraballo disclosed contact with the child victim which Caraballo had not stated at the outset of the interview.   The gradual unveiling of his assertions can be viewed as incriminatory, and even if not, Caraballo's statement which did not rule out that the child put his mouth on Caraballo's penis was inculpatory, notwithstanding Caraballo's assertion that he did not remember that such occurred.

In Florida, a decision on a motion for a mistrial is within the discretion of the trial judge and such a motion should be granted only in the case of absolute necessity.  *Snipes v. State*, 733 So. 2d 1000, 1005 (Fla. 1999).   Caraballo failed to demonstrate that

---

[9] This portion of the redacted interview omitted statements of the investigator to Caraballo.

Caraballo was entitled to a mistrial under Florida law based on the investigator's testimony.  The investigator did not testify that Caraballo made a statement about the allegations that was not heard by the jury.  Given also that trial counsel elicited from the investigator that the important facts of the case were captured on tape, that Caraballo did not admit to forcing the child victim to have sexual contact with him, and that Caraballo did not admit to having consensual sexual contact with the child victim (Ex. 1, V 4 T 413), Caraballo fails to show any deficiency in counsel's performance in not objecting or moving for mistrial based on the investigator's testimony.

**Subclaim B**

Before the jury heard Caraballo's taped statements, the trial court advised the jury that the recording conversations were evidence and the transcript was a listening aid. (Ex. 1, V 4 366)  The trial court also advised the jury:

> I have made some legal rulings in regards to the tape.  And based on my legal reasons [sic] there were certain things on the tape that were excised or redacted or taken off.

(Ex 1. V 4 T 367)  Caraballo in subclaim B claims his counsel failed to object to the court's comment about the redaction. (Doc. 1 at 15)  According to Caraballo, the state trial judge by his comment "my legal reasons" personalized his assessment of the significance of the redacted portions. (Doc. 1 at 16)  Caraballo further contends that the court's remark could have been interpreted to mean that redacted portions contained inculpatory statements by Caraballo.  He also asserts that he suffered prejudice from counsel's failure to object or ask for a curative instruction. (Doc. 1 at 16)

The Respondent asserts that this claim is unexhausted because Caraballo did not raise this claim in his Rule 3.850 motion, and that when Caraballo raised the claim on

postconviction appeal, the State in its answer brief asserted that this claim was not preserved. (Doc. 11 at 25)  Respondent asserts that Caraballo is foreclosed from bringing this ground in a Rule 3.850 motion because the two-year time limit for doing so has expired. (Doc. 11 at 26)  The State asserted on postconviction appeal that the issue raised on postconviction appeal was not preserved because it was not presented in Caraballo's Rule 3.850 motion. (Ex. 18 at pgs. 6-7).  The state court silently affirmed.

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits.  *See Richter*, 562 U.S. at 99; *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013). The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely."  *Richter*, 562 U.S. at 99–100.   The Court finds that the Respondent has rebutted the strong presumption that the state appellate court adjudicated on the merits Caraballo's allegations that the trial judge's comment personalized his estimation as to the significance of the redacted portions and that trial counsel should have sought a curative instruction as to the trial judge's remark.  These aspects of ground 7 of Subclaim B were not raised in Caraballo's Rule 3.850 motion, the applicable bar raised by the State on appeal. *See e.g.*, *Washington v. State*, 907 So. 2d 512, 514 (Fla. 2005) ("Washington failed to raise this claim in his present rule 3.851 motion, and he is procedurally barred from raising it now.").   Accordingly, these allegations are unexhausted and procedurally barred.   Caraballo cannot raise these allegations in an untimely, second postconviction appeal or in an untimely and successive postconviction motion.  Caraballo does not allege and show cause or prejudice to excuse

his default, and he cannot meet the fundamental miscarriage of justice exception, as he has no new and reliable evidence of actual innocence.

The remaining allegation in subclaim B -- that trial counsel failed to object to the trial judge's comment on the basis that it could be interpreted as meaning that redacted portions contained incriminating statements of Caraballo -- is exhausted and not defaulted. Caraballo, in his Rule 3.850 motion, tailored the holding in *Thomas v. State*, 851 So. 2d 876 (Fla. 1st DCA 2003), to his case, asserting that the court's remark indicated to the jury that Caraballo had given a taped confession that the jury was not to consider due to a legal technicality and that a mistrial should have been granted. Caraballo then alleged that unlike *Thomas*, his counsel did not object and move for mistrial or a new trial based on the substantial prejudice of Cone's testimony that Caraballo admitted guilt, when no such admission occurred. (Ex. 11, at pgs. 16-17) Caraballo's Rule 3.850 allegations fairly presented a claim that trial counsel should have objected or sought mistrial on grounds that the investigator's testimony, along with the trial court's comment, conveyed to his jury that Caraballo had admitted guilt during redacted portions of the tape. Even so, Caraballo does not allege in the instant petition that his counsel should have sought a mistrial based on the trial judge's comment. Caraballo claims that his counsel should have objected on the basis that the court's comment was susceptible to an interpretation that redacted portions contained incriminating statements of Caraballo. (Doc. 1 at 16) Although the state postconviction court did not discuss this aspect of Caraballo's ground, deference is due the state appellate court's affirmance as an adjudication on the merits.

Caraballo fails to show any deficiency in counsel's performance in not objecting to the state court's comment.  The state judge did not suggest that any excised portion of the interview held evidence incriminating to Caraballo, and the state appellate court by its affirmance has answered the question under Florida law of what would have happened had counsel argued that the trial judge's comment could be interpreted to mean that redacted portions contained inculpatory statements by Caraballo.

Caraballo fails to show *Strickland* prejudice.  The trial court instructed the jury before it retired to deliberate that it must only look to the evidence introduced at trial and to disregard anything that the state judge may have said that somehow led them to believe that he preferred one verdict over another. (Ex. 1, V 5 T 632-33, 637)  Given these standard instructions and the taped statements of Caraballo which were before the jury, Caraballo fails to show that there was any reasonable probability of a different outcome at trial had counsel contended that the state court's remark could be interpreted to mean that redacted portions of the interview contained inculpatory statements by Caraballo.

Even if the other aspects of subclaim B are exhausted and not defaulted, Caraballo has failed to show deficient performance of counsel to Caraballo's prejudice.  He does not show that an objection to the trial court's comment would have been sustained or a request for a curative instruction would have been granted.  Ground Seven does not warrant habeas relief.

**Ground Eight**

.      Caraballo alleges in ground eight that his trial counsel rendered ineffective assistance by failing to proffer the child victim's testimony about a prior incident of sexual abuse not involving Caraballo for purposes of impeachment of the child victim's mother.

48

Asserting that the victim's mother testified that she did not know of any prior sexual abuse of her son, Caraballo contends that the child victim in deposition stated that he was molested by someone in Puerto Rico and told everyone about it, including his mother. Caraballo contends that the trial court sustained the prosecutor's objection at trial when counsel asked the child victim if anyone in Puerto Rico had touched him inappropriately. Caraballo claims his counsel should have proffered the child victim's testimony in order to preserve his basis for impeachment for appeal. (Doc. 1 at 17)

The Respondent asserts, and this Court finds, that this ground is unexhausted and procedurally barred.   Caraballo raised this ground in his Rule 3.850 motion, and the trial court denied this ground after an evidentiary hearing.   Caraballo waived and defaulted this ground because he did not raise this ground on postconviction appeal.   He cannot bring an untimely second appeal, and he is foreclosed from raising this ground in an untimely and successive Rule 3.850 motion.   Caraballo does not show cause and prejudice to excuse his default, and he does not meet the fundamental miscarriage of justice exception.

Notwithstanding the default, the claim is without merit.   Caraballo fails to demonstrate *Strickland* prejudice. The state trial court found:

> . . . Defendant has not sufficiently demonstrated prejudice.   Defendant argues that, because the victim's mother claimed in her testimony at trial that her son had not been previously abused, the victim's deposition would have damaged her credibility.   The victim's mother, Lisette Vasquez, testified that she was aware of an incident in Puerto Rico when her son was young during which he and another little boy looked at each other's 'private parts.'   In the victim's deposition, the victim stated that a friend touched him inappropriately once or twice when he was little. *See attached Deposition, page 35-36.*   Other than the friend's name, no further information is provided about the incident.   The statement of the victim and the testimony of his mother are not sufficiently divergent to establish [sic] reasonable probability

that the credibility of the mother would have been damaged if the deposition
had been proffered.

(Ex. 16, R 301-02)

At trial, Caraballo's counsel asked Ms. Vasquez if she was stating that A.O. never told her about any prior abuse.  Ms. Vasquez, answered, "No.  After this came out what happened here in Florida he told me something about a friend, a little friend in Puerto Rico."  (Ex. 1, V 3 T 175)  When counsel sought to show that the mother had not testified in deposition about having knowledge of prior abuse, the prosecutor objected, and the trial court allowed counsel an opportunity to establish a predicate.   After the bench conference, Ms. Vasquez testified that she had not told law enforcement about prior abuse, explaining that her son was not abused and that what happened was that two little friends looked at their private parts.  She also testified that she did not state in deposition that her son had been previously abused. (Ex. 1, V 3 T 177-78)

Caraballo asserts that trial counsel should have proffered the deposition testimony of the child victim about the incident in Puerto Rico for purposes of impeachment of the child victim's mother.  Caraballo merely speculates that the mother's testimony would have been discredited had the child victim been confronted with his deposition testimony about an incident in Puerto Rico. The mother's testimony showed that she did not consider the encounter involving another boy as an instance of abuse.[10]  Given also that the proposed impeachment did not impact the credibility of the child victim, Caraballo fails to show that there was a reasonable probability of a different outcome had counsel proffered the child victim's deposition.  No relief is warranted on ground eight.

---

[10] Although Caraballo's trial counsel stated that the incident involved an adult (Ex. 1, V 3 T 300), the child victim in deposition gave no details other than his friend's name. (Ex. 16, R 304)

**Ground Nine**

Caraballo alleges that his trial counsel was ineffective for failing to investigate a sequestration violation between the State's witnesses and the child victim's relatives. (Doc. 1 at 18)  He alleges that his counsel informed the trial court that there was an allegation that some individuals who were related to the child victim had spoken about testimony to people under subpoena for trial.  Caraballo states that the prosecutor advised the trial court that she had spoken to the person in question and that the only thing said was something to the effect, "I don't think things are going well." (Doc. 1 at 18) Caraballo asserts that his counsel, when asked, advised the trial court that she would not seek a mistrial or to exclude the witnesses.  Claiming that he was not informed of improper witness contact, Caraballo asserts that he would have insisted on counsel's moving for a mistrial in light of the state court's inquiry and "open stance" on the matter. (*Id.*)

The Respondent asserts, and the Court finds, that this ground is unexhausted and procedurally barred.  Caraballo raised this ground in his Rule 3.850 motion, and the trial court denied relief after an evidentiary hearing.  Caraballo did not raise this ground on postconviction appeal, and as a result, he waived and defaulted this ground.  He cannot raise this ground in an untimely second appeal or in an untimely and successive Rule 3.850 motion, and he does not show cause and prejudice or that a fundamental miscarriage of justice will result if this ground is not addressed.

Notwithstanding the default, Caraballo is not entitled to relief on this ground.  He failed to show any deficiency in counsel's performance in not investigating, or not moving for mistrial based on, a sequestration violation.  The state trial court held:

> . . . Defendant alleges that counsel rendered ineffective assistance of
> counsel by failing to properly investigate concerns and move for a mistrial

after learning that members of the victim's family had inappropriately contacted witnesses under subpoena. Defendant further claims that his attorney did not inform him of the allegedly improper contact. Ms. Torres, Defendant's mother, testified at the [e]videntiary [h]earing that she observed the victim's mother talking to the victim outside the courtroom. Based on her testimony, it is unclear what Ms. Torres heard them say, if anything, but she believed that they were discussing the case in violation of the rule of sequestration. Ms. Barcelona, Defendant's trial attorney, testified that she was aware that an observer stepped out of the courtroom and said, "This is not going well." Ms. Barcelona did not speak to the people outside the courtroom about statements that were made; she only spoke to the prosecutor. The State's case-in-chief was over; the State was not going to be calling any more witnesses after the alleged violation or statement occurred. That being the case, Ms. Barcelona decided that the comment was harmless, and because she believed the case to be going well for Defendant, she decided against moving for a mistrial. Ms. Barcelona's decision not to move for a mistrial was a strategic decision that falls well within professional standards. Therefore, her failure to move for a mistrial is not an error, within the context of *Strickland*.

(Ex. 16, R 302) Counsel's decision not to seek a mistrial was a matter of reasonable strategy. Caraballo contends his counsel did not pursue an investigation, but he has not alleged that any State witness testified at trial to any matter based on contact with another State witness. Because Caraballo failed to show any deficiency in counsel's performance as to the sequestration issue, the prejudice prong of *Strickland* need not be addressed. Ground nine does not warrant relief.

.        **Ground Ten**

In his last ground, Caraballo claims that the cumulative effect of the alleged omissions and errors of trial counsel deprived him of his Sixth Amendment right to effective counsel. The Respondent contends the ground is unexhausted and that Caraballo's claims that are unexhausted are procedurally barred. (Doc. 11 at 29) Although Caraballo indicates that he raised this ground in his state habeas petition alleging his appellate counsel rendered ineffective assistance (Doc. 1 at 20), his state

petition did not raise a claim accumulating Caraballo's allegations of ineffective trial counsel.  Caraballo did not raise this claim in his Rule 3.850 motion and on postconviction appeal.  As a result, this ground is procedurally barred.  It is apparent that the Florida courts would now refuse to hear this claim, as Caraballo is foreclosed from raising this ground in an untimely and successive post-conviction motion.  Caraballo does not show cause and prejudice or that a fundamental miscarriage of justice will result if this ground is not reached.

On the merits, Caraballo does not show an entitlement to relief.  Assuming that a claim of cumulative error is cognizable in federal habeas proceedings, Caraballo's claim of cumulative error would necessarily fail because none of his individual claims has merit. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (concluding that there can be no cumulative error where there is no error found in the trial court's rulings). Ground ten does not warrant habeas relief.

## IV. CONCLUSION

Any claims not specifically addressed herein have been determined to be without merit. Accordingly, Caraballo's petition for the writ of habeas corpus is **DENIED**.  The Clerk is directed to enter a judgment against Caraballo and to **CLOSE** this case.

## DENIAL OF A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

**IT IS FURTHER ORDERED** that Caraballo is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA.  Section 2253(c)(2) limits the issuing of a

COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Caraballo must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Caraballo is not entitled to a certificate of appealability, and he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Caraballo must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 30, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
*Pro se* Petitioner
Counsel of Record